UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARJUN DUA, Derivatively on Behalf of Nominal Defendant AVIS BUDGET GROUP, INC, <br><br> *Plaintiff*, <br><br> v. <br><br> JOSEPH A. FERRARO et al., <br><br> *Defendants*, <br><br> and <br><br> AVIS BUDGET GROUP, INC., <br><br> *Nominal Defendant.* | No. 2:25-cv-15382 (MEF)(CF) <br><br> **OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

\* \* \*

A shareholder[1] brought a derivative action for the benefit of a corporation,[2] against certain of its directors and executive

---

[1] Arjun Dua.

[2] Avis Budget Group, Inc.

officers.[3]  See Verified Stockholder Derivative Complaint ("Complaint") (ECF 1), at 1, ¶¶ 17-29.[4]

Around six weeks later, the parties together moved to dismiss the action.  See Stipulated Motion and [Proposed] Order Voluntarily Dismissing Action Without Prejudice ("Stipulated Motion") (ECF 4) at 3.

The motion is denied.

* * *

Under Federal Rule of Civil Procedure 23.1(c), "[n]otice of a . . . voluntary dismissal . . . must be given to shareholders or members in the manner that the court orders."

But here, no judicially-approved notice has been given.[5]

So out of the gate, it looks like the voluntary-dismissal motion must be denied.

The parties, though, argue that the "Court should exercise its discretion to relieve the [p]arties of any requirement that they provide written notice of the . . . [d]ismissal to [the] shareholders."  Plaintiff's Letter in Support of Voluntary Dismissal Without Notice ("Plaintiff's Letter") (ECF 6) at 2; see also Defendants' Letter in Support of Voluntary Dismissal Without Notice ("Defendants' Letter") (ECF 7) at 1-2.

This argument does not work, for the reasons set out below.

* * *

Where it applies,[6] Rule 23.1(c) does not leave space for "discretion[ary]" decision-making by the court.  The Rule is

---

[3]  Joseph A. Ferraro, Izilda P. Martins, Jagdeep Pahwa, Anu Hariharan, Bernardo Hees, Lynn Krominga, Glenn Lurie, and Karthik Sarma.  See Complaint ¶¶ 8, 19-29.

[4]  The complaint alleged violation of the Securities Exchange Act, breach of fiduciary duty, unjust enrichment, and waste of corporate assets.  See id. ¶¶ 70-98.

[5]  Some notice was apparently provided via public filings to investors.  See Defendants' Letter in Support of Voluntary Dismissal Without Notice ("Defendants' Letter") (ECF 7) at 3.  But that was not pre-approved by the Court.

[6]  The Rule does not always kick in.  For example, "[i]nvoluntary dismissals do not require . . . notice," 5 Moore's Federal

2

directive and mandatory; it does not speak in the language of choice. It says that notice "must be given," not that it may be given. Fed. R. Civ. P. 23.1(c) (emphasis added).

And the cases are clear.

In general, as to the principle that the words of the Federal Rules of Civil Procedure "should be given their plain meaning." Elliott v. Archdiocese of N.Y., 682 F.3d 213, 225 (3d Cir. 2012) (quoting Berckeley Inv. Grp., Ltd. v. Colkitt, 259 F.3d 135, 142 n.7 (3d Cir. 2001) (citing Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 540, (1991)).

And in particular, as to Rule 23.1 --- with the Third Circuit having described notice in cases covered by the Rule as a "must," Cramer v. Gen. Tel. & Elecs. Corp., 582 F.2d 259, 269 (3d Cir. 1978), and "essential." Id. at 268; see also, e.g., Pittston Co. v. Reeves, 263 F.2d 328, 329 (7th Cir. 1959) (holding that notice of voluntary dismissal "was required," and that the district court "had no discretion as to the giving of the notice"); Lucking v. First Nat. Bank-Detroit, 142 F.2d 528, 529 (6th Cir. 1944) (holding, in the context of a voluntary dismissal motion, that "there can be no dismissal without the approval of the court"); Cross v. Oneida Paper Prods. Co., 117 F. Supp. 919, 921 (D.N.J. 1954) (holding, in the context of a motion to vacate a voluntary dismissal order, that "the words of the rule make . . . notice . . . [a] mandatory condition[] precedent to dismissal").[7]

---

Practice § 23.1.10[1][a] (3d ed. 2025) --- as when a court dismisses a case on the merits or for lack of jurisdiction. Here, though, the parties' motion seeks voluntary dismissal. See Stipulated Motion at 2.

[7] Lucking and Cross were decided under an earlier version of Rule 23, which provided that "notice of [any] proposed [voluntary] dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(c) (1958). Until 1966, what we now call class actions and derivative actions were each governed by the same rule, Rule 23. See 7C Wright & Miller's Federal Practice & Procedure § 1839 (3d ed. 2025). Therefore, pre-1966 cases involving dismissals under the old Rule 23 are "authoritative for purposes of applying Rule 23.1" to dismissals under the current Rule 23.1, which focuses only on derivative actions. Id. And the analogy between the caselaw under the old Rule and

3

In a nutshell: Rule 23.1 requires what has not been given in this case --- judicially-approved notice.

* * *

Against this conclusion, the parties argue that the Rule should not be applied where its underlying purposes have been satisfied --- and here, the argument goes, they have been.

Disregard for a moment the most serious objection to this argument --- the one alluded to just above, that the Court is charged with enforcing the Rule as written, not as it might have been written based on its asserted purposes.

But even putting that aside, the parties' argument is not persuasive.

To see why, look to the various asserted purposes of the Rule.

* * *

Per the parties, see Plaintiff's Letter at 3-4; Defendants' Letter at 2, one purpose of Rule 23.1 is to avoid prejudice to the company in whose name a claim is brought, including by ensuring that company claims are not boxed out for lack of notice --- that cases are not dismissed after the limitations period has expired, such that no one can pick up the baton after a derivative plaintiff has walked away from the case she had been pursuing.

That is a purpose of Rule 23.1. See 7C Wright & Miller's Federal Practice & Procedure § 1839 (3d ed. 2025); cf. Chester B. McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L.J. 421, 428 (1937) (making this same point, but before Rule 23 became operative).

And that purpose may have been satisfied here.[8]

---

the new Rule is particularly tight here, on the question of the mandatory-ness of today's Rule 23.1 --- because as to that question, there is no real daylight between notice "shall be given" (the language of the old Rule 23) and notice "must be given" (the language of today's Rule 23.1).

[8] The parties argue that a three-year limitations period applies, and that given when the clock began running, around 14 months would remain if the case were now dismissed. See Plaintiff's Letter at 3. If all this is right, nothing is cut off by the limitations period and there would seem to be enough

4

\*   \*   \*

Per the parties, Rule 23.1's notice requirement also has a second purpose.

In particular, Rule 23.1 requires notice so that shareholders who receive a heads-up about the proposed dismissal can object if they want to --- on the ground, say, that the dismissal was the (improper) result of a private settlement, one that benefits the plaintiff (and maybe her lawyers) but not the company whose claims were the basis for the underlying lawsuit that is proposed to be dismissed.  See Stipulated Motion at 3; Plaintiff's Letter at 2-4 (same); Defendants' Letter at 1-2 (same); accord, e.g., 7C Federal Practice & Procedure § 1839; Birnbaum v. Birrell, 17 F.R.D. 409, 411 (S.D.N.Y. 1955).

Here, the parties argue, there is nothing like that.  No payment has been made, and no payment will be made.  See Stipulated Motion at 3; see also Plaintiff's Letter at 2-4; Defendants' Letter at 1-2.  See Plaintiff's Letter, Declaration of Michael I. Fistel, Jr. in Support of Voluntary Dismissal Without Prejudice and Without Notice ("Fistel Declaration") (ECF 6-1) at ¶ 10 (so swearing); Defendants' Letter, Declaration of Samuel I. Portnoy in Support of Defendants' Letter Seeking Stipulated Dismissal of the Action Without Prejudice and Without Notice (ECF 7-1) at ¶ 2 (same).

So, the argument goes, notice is not necessary because it will not turn up anything of concern.

But without more, this is not persuasive.

---

time for another litigant to put together a case and come forward with it.  Cf. Bushansky v. Armacost, 2014 WL 2905143, at *5 (N.D. Cal. June 25, 2014) (where the expiration of the limitations period was "less than one year" from the date of dismissal, there was a "danger . . . of prejudice to shareholders").  (There may be prejudice from a voluntary dismissal in other circumstances, too --- based on harms separate from the expiration of a limitations period.  See, e.g., Delahanty v. Newark Morning Ledger Co., 26 F. Supp. 327, 328 (D.N.J. 1939) ("[T]he plaintiffs urge their right to withdraw from the forum leaving defendants without opportunity to dispel the clouds which plaintiffs have attempted to hang over them or to bring fruition their prepared efforts to disprove the allegations of the plaintiffs.").)

5

Why?  Because it is not always the case[9] that a mandatory process protection (like the Rule 23.1 notice requirement) can be dispensed with because the substantive standard that is said to animate it (like the requirement that settlements must be appropriate) has been satisfied.

Can, say, constitutionally-required cross-examination (a process protection) be skipped over because it is believed that the witness is reliable anyway?[10]

Can the obligation to contact class-action members as to final settlement approval (a process protection) be ignored because the pay-out looks like enough to a judge?

Maybe there are reasons, here, to think that process can be put aside because the substantive standard has been met --- that pre-dismissal notice under Rule 23.1 can be bypassed in this case because there has assertedly been no private settlement.

But if there are such reasons, the parties have not put them forward.

\*   \*   \*

Another point: even if some of the purposes of Rule 23.1 have been satisfied here, that is still not a reason to forego judicially-approved notice.  Because the Rule has another purpose, too.  And that purpose cannot be achieved without actually doing what Rule 23.1 requires --- giving notice.

In particular, Rule 23.1 notice is mandated, in part, to help ensure that a derivative-action-plaintiff does not "becomes faint hearted prior to the litigation's completion," and therefore "willing to settle the action even though it might not be in the best interests of all concerned."  7C Federal Practice & Procedure § 1839; see also William E. Haudek, The Settlement and Dismissal of Stockholders' Actions --- Part I, 22 Sw. L.J. 767, 771 (1968) ("The plaintiff's loss of heart. . . has . . . been held to be a target of the Rule.").

The Third Circuit has landed on this conclusion.  In Cramer v. General Telephone & Electronics Corp., 582 F.2d 259 (3d Cir.

---

[9]  And maybe not even typically the case.

[10]  See Crawford v. Washington, 541 U.S. 36, 68-69 (2004) (holding "no," and on that basis overturning Ohio v. Roberts, 448 U.S. 56 (1980)).

6

1978), for example, the court of appeals noted that Rule 23.1's "notice requirement guards against dismissals which are due primarily if not entirely to the named plaintiff's change of heart about prosecuting the action." Id. at 269;[11] accord, e.g., Papilsky v. Berndt, 466 F.2d 251, 258 (2d Cir. 1972) ("Rule 23.1 safeguards will protect the corporation and absent stockholders from a plaintiff who becomes 'fainthearted' prior to the completion of the litigation") (quoting Webster Eisenlohr, Inc. v. Kalodner, 145 F.2d 316, 320 (3d Cir. 1944)).

In a derivative suit, "the named plaintiff represents" not just himself, but also "the corporation itself and the entire class of stockholders." Cramer, 582 F.2d at 268; accord 5 Moore's Federal Practice § 23.1.02[1] (3d ed. 2025).

This is a real burden to take on, and it implies a responsibility to what can be a great many people. See 5 Moore's Federal Practice § 23.1.09[1] (explaining that derivative-action plaintiffs stand in "a fiduciary relationship with the corporation and other shareholders").

On the Third Circuit's understanding in Cramer, the Rule 23.1 notice obligation is there, in part, to help ensure that people who volunteer themselves as derivative plaintiffs will understand from the get-go what they have embarked on.  They will not, later, be able to casually change their minds.  They should step off the curb having thought things through in advance, because getting out of the case in the middle of the road will not necessarily be quick and straightforward.  A simple "change of heart," Cramer, 582 F.2d at 269, would be enough to shut down one's own case --- but more, in the form of Rule 23.1 notice, is required to end a case brought by a person standing in others' shoes.

On this understanding, the notice requirement is there at Time 2 in part to ensure that derivative plaintiffs are acting with eyes wide open at Time 1, when they begin litigating.[12]

---

[11]  And per the Third Circuit, "[w]here the parties stipulate to the dismissal of a derivative action prior to any adjudication of the merits, all of the policies underlying the notice requirement are implicated." Cramer, 582 F.2d at 269 (emphasis added).  Not just the two purposes proffered by the parties.

[12]  And part of having eyes wide open at Time 1, when the litigation is initiated, is knowing that a court will always be

And on this understanding, the Rule 23.1 notice requirement always has at least some role to play. So it should be enforced across the board, as the text of the Rule requires --- not just in the subset of circumstances where the Rule's other purposes[13] are thought to require notice.

*    *    *

A final note.

The parties suggest that pre-dismissal notice could prove "burden[some] or expens[ive]." Plaintiff's Letter at 3; see Defendants' Letter at 2.

---

present at Time 2. To resolve the case on the merits. To approve a settlement. Or to review the Rule 23.1 notice of a voluntary dismissal. See Wolf v. Barkes, 348 F.2d 994, 997 (2d Cir. 1965) ("commencement of a derivative suit provides a handle for judicial supervision"). The knowledge that there is no gap in the fabric, that a derivative suit will necessarily end with at least some judicial involvement --- that may tend to reduce the number of "strike suits" that may sometimes be brought in the derivative context. See 7C Federal Practice & Procedure § 1839 & n.3 (suggesting that notice provisions are designed, in part, to avoid "strike suits") (citing Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 532 n.7 (1984); cf. Haudek, Stockholders' Actions, at 769-70 (explaining that the notice obligation was first introduced into the Federal Rules in the 1930s in part because "[m]any stockholders' actions of doubtful merit were brought simply to secure private settlements for the plaintiff and his lawyer"); Sidney Post Simpson, Fifty Years of American Equity, 50 Harv. L. Rev. 171, 190 (1936); see generally Tim Oliver Brandi, The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action, 98 Dick. L. Rev. 355, 357 (1994). And judicial involvement in all derivative cases, even ones that end in voluntary dismissal, may also tend to reduce the value of threatening to bring a frivolous lawsuit. Because if the threat comes to fruition and the frivolous case is filed, then a court will eventually be there to assess aspects of the lawsuit --- and courts have tools at hand to address frivolous cases.

[13] Like ensuring that there is enough time left in the limitations period, and that there is no improper private settlement.

8

But that is not an argument against notice, so much as an argument for notice that balances the various competing factors.

Rule 23.1 allows notice to be provided "in the manner that the court orders," Fed. R. Civ. P. 23.1(c), and courts have exercised their discretion to try to thread the needle, by approving forms of notice that do not run up unnecessary costs. See, e.g., Bushansky v. Armacost, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (approving the "posting [of] a link on [the relevant corporation's] Investor Relations website and the filing of a Form 8-K with the SEC") (citing In re Rambus Inc. Derivative Litig., 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (notice published on company website, in a press release, and in an 8-K); In re MRV Comms., Inc. Derivative Litig., 2013 WL 2897874, at *1 (C.D. Cal. June 6, 2013) (notice filed as an attachment to a Form 8-K, published on company website, and published for one day in Investor's Business Daily); Feuer v. Thompson, 2012 WL 6652597, at *2-3 (N.D. Cal. Dec. 13, 2012) (notice published on a settlement website, in a Form 8-K, and once in The Wall Street Journal and The New York Times); accord 7C Federal Practice & Procedure § 1839 (noting that where "there is an extremely large number of stockholders" notice by publication may be ordered).

\*   \*   \*

For the reasons set out above, the parties' motion to dismiss is denied.

This is without prejudice.  If the parties wish to renew their motion after seeking and receiving court approval as to notice, as envisioned by Rule 23.1, they may do so.[14]

IT IS on this 24th day of November, 2025, **SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　　
Michael E. Farbiarz, U.S.D.J.

---

[14]   If a plaintiff does not seek to provide notice of voluntary dismissal, but rather opts to hang back and not actively pursue the case, which can be equivalent in practice to dismissal --- then courts have taken a variety of steps. See Haudek, Stockholders' Actions, at 776-79.